The next case today is Carlos Montero Silva versus Anton Moniz. Appeal number 21-1967. Attorney Bard, please go ahead and introduce yourself for the record to proceed with your argument. Good morning, Your Honors, and may it please the court. Jonathan Bard for the petitioner appellant Carlos Montero Silva. Judge Lynch, if I may, reserve two minutes for rebuttal, please. Yes, you may. Thank you. Mr. Silva arrived in the United States 33 years ago at age six as a lawful permanent resident. Mr. Bard, please, we are an appellate court. Could you get to the issues of law? Certainly, Your Honor. The question before this court is whether Mr. Silva's categorical detention without a bond hearing became unreasonable after over two years and three months when the district court dismissed his habeas petition. The answer to that question is yes, and the appropriate remedy is a bond hearing for Mr. Silva at which the government would bear the burden of proving dangerousness by clear and convincing evidence, and the immigration court would consider Mr. Silva's... Mr. Bard, would you answer a threshold question for me? Are we to consider the situation of your client at the time of the hearing before the district court or at the present time since there have been subsequent developments which are matters of record? This court should consider the circumstances that existed at the time that the district court dismissed Mr. Silva's habeas petition. However, the court may take judicial notice of the additional time that has elapsed in Mr. Silva's removal case, Your Honor. All right, and I understand that there is currently, in effect, a stay of removal that exists only because the government for some reason has consented to it? That is correct, Your Honor. There is a stay on the issuance of the mandate in Mr. Silva's removal case. He is preparing a petition for writ of certiorari. Thank you. Your Honor, based on the five factors... I just want to make sure I understand you. Why would we be looking at conditions as of a previous time when the relief requested could be mooted or otherwise affected by subsequent events? I would have thought your answer would have been we should be looking at it as of current conditions. If you could just elucidate why we would, as in a case for damages, for example, we might be looking at the previous time. Certainly, Your Honor. Our position is that the court, in conducting de novo review of the habeas dismissal, should look at the circumstances at the time of that dismissal. However, the court is able to consider on judicial notice facts such as the additional time that has elapsed, where Mr. Silva has spent 10 or 11 months of additional time in custody, as well as these appellate developments in his removal case. So it really is that the court can, if it so chooses, to look at circumstances as they exist now, as long as those circumstances are susceptible of judicial notice. But our position is that the First Circuit need not consider the additional time that has elapsed in order to conclude that Mr. Silva should have been granted a bond hearing after two years, over two years and three months, when the district court denied him that bond hearing. Well, if he had been released on bond in the interim, could we consider that? If he had been released on bond, he would not go on to accumulate additional time in custody. I believe that the relevant period of detention would be the detention that was served prior to his release. But in a habeas case, you would still say that we have to decide this prior question that's no longer relevant in any real sense? I don't know that I would say the prior question is no longer relevant. It's merely that there are cases which are capable of being noticed through judicial review, and really we're talking here about the additional time that Mr. Silva has spent in custody and the appellate developments as well. Mr. Bard, you seem to want to have your cake and eat it too. You want us to consider the additional time during which he lost his appeal on the underlying BIA order of removal. The case is not mooted only because of the fact that the government, for whatever reason, consented to a stay of mandate. But you want us to consider the time, but not consider the closer to removal now, given in practical terms the chances of your getting a petition for cert allowed. And at the point that the mandate becomes, is issued, then we are under a new prohibition on removal, which Congress has imposed in no uncertain terms, because your client is an aggravated felon. How can we not take all of that into account on what appears to be, at this point, only an as-applied constitutional attack? Your Honor, the court certainly can take into consideration both the additional time that has elapsed in custody, as well as the appellate developments. We are not picking and choosing. Those are both fair game through judicial notice. We would point out that the most important factor, as courts have recognized in this due process assessment, is the I beg your pardon. When have we ever said that? I don't read our case law to say any such thing. Excuse me, not this court exactly, Your Honor. I would reference... I thought one of your arguments was there are at least five different factors that have to be is one, and inherent in that is the reason for the continued detention. That is correct. There are five factors for this court to consider, and those five factors should have been considered by the... But the district court said it considered those factors. Why would we adopt your argument that it did not? Well, the district court didn't say it considered those factors. It noted in a one-sentence ruling that for all of the reasons set forth in the government's supplemental brief, it would deny Mr. Silva's Reid claim. It adopted wholesale that brief, and that brief contained material errors of fact and of law. For example, the government's supplemental brief did not acknowledge the 10 months of government delay that the government... Five minutes remaining, five minutes. That the government on appeal has now acknowledged. So to the extent this court were to accept that the district court did by adopting in full the government's brief consider all of the relevant factors, that decision is based on mistakes of fact as well as mistakes of law. But I thought your argument was that this was de novo review for us. That is correct. Then it doesn't really matter what the district court said. On de novo review, to my mind, one very important factor is the reasonable foreseeability that removal will occur in the near future. And I don't know how that could be much more foreseeable than the fact that your client has now lost his petition for review, lost his bid for en banc review, and is hanging by the single thread of the possibility of the grant of a petition for is a long-odd proposition. I mean, that's the only thing at this moment that stands between him and the fact of removal. Yes, your honor. Statistically, he is likely to spend an additional roughly eight months in confinement, even in the event that his appeal concludes early because the Supreme Court denies his petition. He's been now confined for over three years. Mr. Bard, that is because of choices he made. I agree that cannot be used against him, but you cannot use that against the government either. This time period has been consumed by a great deal of litigation in which the government chose to defend itself and say your arguments had no merit. So you want us to hold that against the government, but that is not the law. This court in its 2016 re-decision explained that pursuing appeals does not constitute dilatory tactics. That's what I said, counsel. And further, that a non-citizen who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief the law makes available to him. So it is true Mr. Silva has availed himself of appellate review. That does not, as the government contends, prevent his detention from becoming unreasonably prolonged. Again, the length of his detention strongly weighed in favor of the district court granting him a bond hearing. And the other factors as well, I go back to the government delay. The government incorrectly asserts that as long as it has not delayed or engaged in any other dilatory tactics, that detention cannot become unreasonable. This court rejected that position in its 2016 read opinion explaining that this is not a question of whether there are significant unjustifiable delays. But even if the government's position were true, the government admits that it delayed Mr. Silva's removal proceedings by approximately 11 months here. So even on the government's standard, which is not the correct standard that this court has accepted, the government is wrong on this. The Amici Curie in this court captured the point succinctly by explaining a bond hearing is not a remedy for government malfeasance or delay. It is a process that the constitution requires to ensure that the increasingly severe deprivation of an individual's liberty is still justified by the government's interest in their confinement. Notwithstanding that Mr. Silva has twice lost before this court and is now seeking review by the Supreme Court, every additional day he spends in custody is a substantial deprivation of his liberty and he seeks here a bond hearing so that an immigration judge can make the determination of whether he should be released and that immigration judge can consider the status of his immigration proceedings among other factors. The question here is... That's time. Thank you Mr. Bard. You have reserved two minutes. Thank you. At this time Mr. Bard, please mute your camera and your audio. Attorney Fitzgerald, if you could introduce yourself on the record to begin. Thank you, your honors. Michael Fitzgerald for the respondent, Appali Anton Moniz. Your honors, I'd like to pick up where Judge Lynch's questions left off, which is the reason why this case is here and has continued this long is largely because Mr. Silva has been availing himself of the ample procedural protections Congress has afforded in removal proceedings and so the government agrees that the fact that Mr. Silva has done so, has filed a PFR, has petitioned for rehearing on bonk, can't be held against him. It's certainly not a penalty, but nor can it be held against the government. The notion that the extra period of time associated with exercising one's right to appeal is somehow a punishment upon the non-citizen, I think cannot be reconciled with note 14 and more, which simply was not premised on the notion that an appeal would take a specific amount of time. Instead, the analytical thrust of that reasoning was really the non-citizen's choice in either exercising the right to appeal or accepting the final order of removal, recognizing that that's an undeniably difficult choice, but it's the fact of the choice that that effect alters the due process analysis. Mr. Fitzgerald, to the extent that your opponent accepted your proposition, he argues that there's still 11 months of delay that he says the government caused unjustifiably. What is your response to that and what precise period of time do you understand him to be referring to? Sure, your honor. A few responses. First, the government does not agree and has not conceded that it is delay in the sense that it would be counted against the government in the analysis. I understand the 11 months quote-unquote delay to be referring to the fact that the government had initiated removal proceedings while Mr. Silva was in state custody, and in that time, there was a secession mistake with the notice to appear, and then the government added on additional charges of removal, but that all occurred prior to Mr. Silva's entering immigration. So the fundamental response I would have to this is, one, that it's not delay, but two, it's not even time that would affect the due process analysis, which of course is only triggered by the federal government's protected liberty interest, which just does not occur until the non-citizen is taken into immigration custody. If I make this point, if Mr. Silva was right, if you were to accept that logic, then it would have to be equally true that a non-citizen's conduct in state custody before immigration detention that pushes out that date would also have to be taken into account. So you say because of good conduct time, and then the non-citizen does something in state prison that pushes out that release date, that too would delay the start of immigration proceedings, but I don't think any side, I certainly don't think Mr. Silva's suggesting that that type of conduct on the non-citizen should be counted towards the analysis, and so two, nor should pre-detention litigation conduct by the government really matter in this context, but it's certainly not accepted as such a dilatory tactic on behalf of the government. These things can and certainly do happen. It's not that the government was unjustifiably delaying his removal proceedings. Mr. Fitzgerald, let me ask you a somewhat different question. I mean, that answer is clear and we appreciate it. Let me ask you a somewhat different question. Mr. Bard, as I for continued detention, the petitioner exercised rights of appeal up and down the line. The prospect of removal may be growing more imminent, etc., but given the length of detention, it's not for the court of appeals to say no bond hearing, but given the length of detention an immigration judge, in the exercise of the petitioner's due process right, should weigh all of those factors and decide whether notwithstanding those factors, he should still be released on bond. What's your response to that? So our response to that, Judge Celia, is that the validity of that argument really depends on how you view the relevance of the sheer duration of the proceedings standing alone, and I don't think that total duration, sheer duration, standing alone is dispositive of reasonableness. It is not the case that length of detention is an inverse function of reasonableness in this case, such that it will always be the case the longer proceedings last, the more unreasonable detention is likely to be. I think that, if anything, length is really just potential evidence of the ultimate question of law and fact here, which is, has detention become unreasonably prolonged in relation to its purpose? And so a good way, I think, to think about it is that the length of time it reasonably takes to conduct removal proceedings is going to be different depending on what those proceedings entail. So, for instance, it naturally takes longer to litigate before the IJ, the BIA, a PFR before the circuit court than it would just to receive a removal hearing before the IJ. And so we can't say that X amount of time is always going to be reasonable in every given case. I think it is reasonable here, say, as compared to the individual non-citizen in the Reid litigation. There, Mr. Reid, it had been 14 months before he had even started his appeal before the BIA. So there, the court, I think, recognized that 14 months in that context was unreasonable. Whereas here, even though removal proceedings have lasted longer than 14 months, that's because we are much further along in the removal process. And so we can't view total duration in the lens of having the same independent significance in each case. I think that seems to be an argument that there's got to be some increment of unreasonable delay in the litigation process before a bond hearing occurs, before a right to a bond hearing best. I think that could certainly be the case. It's sufficient, but not necessarily necessary. So certainly if there was either delay post the bond hearing in the PFR process, that could also count. I also don't think Mr. Silva has quite characterized the government's position accurately in always and necessarily depending on government delay, dilatory, in order to trigger the due process. I think you could potentially have situations in which the government isn't delaying, causing dilatory tactics. But let's say the government is the one that keeps on losing at each stage, and it's the government that keeps on appealing. And that's not taking an unreasonable amount of time. The government's not delaying. But in that situation, you might say that, well, the reason for the continued detention here is not the normal course of removal proceedings. The reason for detention in that scenario might be the weak merits of the government's case and the fact that it keeps having to appeal. So it's not this sort of strict position that it always has to be dilatory conduct. I think that was ultimately this court's recognition in this last decision in the re-litigation in recognizing that Damore precludes the notion of a six-month bright line, because the respondent in Damore, Mr. Kim, had been in detention for six months at the time the Supreme Court upheld the detention. But critically, the reason why one month, six months, or 12 months, say, in the re-litigation is generally permissible, everything else being equal, is not because we view that amount of time as constitutionally significant or an easy, light burden on the non-citizen. The reason why that amount of time is generally permissible is because we recognize it takes at least that amount of time to conclude removal proceedings, specifically before the IJ and the BIA. That's the ultimate principle drawn from Damore that I think Reed relies on. It's not that six months has inherent significance. It's that, well, it reasonably takes that amount of time to litigate before the IJ and I think that analysis has to hold equally true when we're in the context of litigating a PFR and now a petition for cert. It's not that time in and of itself is going to be dispositive. The other points I'd make about in terms of the relevant, I guess, time period sort of facts to the facts as they exist at the time of the complaint, but certainly the district court, like this court, could have accounted for and did account for, I think, facts you could take judicial notice of, such as just the passage of time, the stage of the proceedings, things like that. I think this court could do the same thing as well on appeal, but insofar as there, let's say there are developments, facts that are important to resolving the constitutional claim, I think it's important to highlight that Mr. Reed could always file another habeas petition. Sorry, Mr. Silva, he could have done that yesterday, he could do that today, he could do that tomorrow to allow the district court to have minutes remaining or five minutes, new developments that might bear on his claim. Normal preclusion principles don't apply in this habeas context, so he could certainly do that to the extent post-judgment developments were important to consider. The other, I think, that came up in my friend's presentation was sort of how do we operationalize this context, what this test, this reasonableness test, what factors do we consider? And I think this court could certainly affirm the district court's judgment based on the fact that it properly applied the Reed factors, but as we pointed out below and on appeal, those factors don't really map onto this case perfectly, nor will they be precisely relevant in every case, and that's because, very respectfully, I think they come from the Reed 2016 decision, and I think the Reed 2016 decision in formulating those factors relied on the notion that the purposes, relevant purposes underlying mandatory detention without a bond hearing are brevity and removability, and that support, it cited Justice Kennedy's concurrence in D'Amour, and it's true that Justice Kennedy's concurrence in D'Amour noted that the presumption underlying all of immigration detention is removability, but he found that Joseph hearings were tested in an individual case, that presumption adequately tested the removability presumption. Nowhere did Justice Kennedy suggest that brevity, nor did the majority in D'Amour suggest that the relevant purpose underlying mandatory categorical detention. Categorical detention, the purpose of categorical detention is naturally to prevent individualized bond hearings, and that purpose would always be served by not providing individualized bond hearings. That is the legitimate concern that Congress legislated against in 1996, and the last thing I'd leave this court with is that if there's one lesson that can be consistently gleaned from the Supreme Court's due process cases in this area, in this court's, is that Congress can constitutionally legislate, and the executive can constitutionally execute rules vis-a-vis non-citizens that it could not vis-a-vis citizens, and that holds doubly true for criminal non-citizens such as Mr. Silva, who, after being afforded full criminal process, was convicted beyond a reasonable doubt of a very serious crime, and after he committed that crime, you know, he skipped town for nine years, and so I think this just, you know, critically underscores the legitimate concern that Congress had in passing section 1226C. If your honors have no further questions. Just one question, you, close to the very end there, talked about the categorical prohibition. I'm not sure if you're saying that an as-applied challenge based on lack of brevity, yeah, based on lack of, primarily based on lack of brevity, could never succeed, an as-applied challenge could never succeed. Is that what you're saying? No, Judge Howard. The government recognizes that as-applied challenges can be brought and could succeed. I think the point I was making is just that in analyzing such an as-applied challenge, the relevant test is not brevity. It would be the reasonableness, which I think you would just start from the core holding of the Supreme Court in this area, which is that detention is a constitutionally valid aspect of removal proceedings. It's valid so long as it's incident to removal proceedings, and so it would make sense that the as-applied constitutional concern would kick in, not just if we decide it's not brief anymore, but the constitutional concern would kick in when the facts indicate that a non-citizen's detention is no longer fairly incident to or a function of the normal course of removal proceedings. I think that's really what, say, Justice Kennedy's concurrence in D'Amour is getting at, is when we can no longer say it's a function of the normal course of removal proceedings, we might need to then inquire into whether it's for some different unjustified purpose, and that's when it becomes that sort of outlier case. That's what triggers the need for additional inquiry under the due process clause. Thank you, Mr. Fitzgerald. Mr. Bard has two minutes remaining. Thank you. Mr. Bard, please introduce yourself on the record to begin. Jonathan Bard for the Petitioner Appellant Carlos Montero Silva. I'd like to address the two points that Mr. Fitzgerald made. The first has to do with the D'Amour v. Kim case, on which the government relies very heavily in arguing that Mr. Silva's prolonged detention was and continues to be justified. D'Amour v. Kim does not dictate the outcome of Mr. Silva's habeas petition, because the Supreme Court in that case was under the impression that in 85% of the cases, detention would last approximately a month and a half, and that in the 15% of cases where there was an appeal, detention would last around five months. We're looking now at a detention which, through judicial notice, this court can acknowledge, has reached and in fact exceeded three years and two months, and in D'Amour, the non-citizen conceded that he was here. Of course, Mr. Silva continues to make what the government has accepted are legitimate challenges to his removability. He has found support in two circuit courts and from one judge on this court and will continue to pursue his appeal. Another point is that the government argues that pre-litigation conduct does not matter, or rather pre-immigration detention conduct does not matter here, but the government is fundamentally collapsing the different prongs of the Reid test. There is a prong that looks at the total length of detention. There is a separate prong that looks at whether there's been any delay by the government or by the non-citizen, and there are other cases in which different courts have found that delay by the government in the immigration proceedings counts against the government under that prong. Had the government properly served the NTA without missing information and included the charges it intended to pursue and its attorneys had shown up at immigration court hearings, Mr. Silva would have been roughly a year further ahead in his proceedings. So that's a time that delay does count. Thank you, your honors. Thank you, Mr. Bard. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the hearing.